**In re FRITZ–MAIR MANUFACTURING COMPANY, Debtor.**

**Timothy E. THOMPSON, Trustee, Plaintiff,**

**v.**

**Clifford McMASTER, United States Trustee, United States of America (Internal Revenue Service), et al., Defendant.**

**Bankruptcy No. 481–00395.**
**Adv. No. 481–0236.**

United States Bankruptcy Court,
N. D. Texas,
Fort Worth Division.

Jan. 13, 1982.

Timothy Thompson, Fort Worth, Tex., for plaintiff.

Michael Broome, Arlington, Tex., Robert G. West, Fort Worth, Tex., for defendant.

## MEMORANDUM OPINION

JOHN FLOWERS, Bankruptcy Judge.

The issue presented in this adversary proceeding is which party is entitled to ownership of an oil field pump jack manufactured by the Debtor and now in the possession of the Trustee.

In February or March, 1981, the Debtor orally agreed to sell a proto-type oil field pump jack to the Defendant, Thomas Durham. At that time the pump jack was in the drawing board stages and actual physical manufacture of it did not begin until mid-March. Defendant paid for the incomplete unit on April 23, 1981, paying a lesser price for the unit than it would cost if complete and operable. Seven days later a bankruptcy petition was filed. Sometime between April 23 and the date the petition was filed the unit was moved to a corner of the Debtor's shop. The partially completed pump jack remains in the Debtor's workshop along with remaining parts yet to be installed on it.

Defendant claims the unit as a buyer in the ordinary course of the Debtor's business and argues the unit should be surrendered to him. The Trustee argues (1) that Defendant was not a buyer in the ordinary course of business, and (2) that any transfer of the pump jack to the Defendant by the Debtor should be disallowed as a voidable preference pursuant to § 547 of the Bankruptcy Code. The North Fort Worth Bank (Bank) claims a perfected security interest in the Debtor's inventory and the pump jack as part of that inventory. Essentially, the Bank and Trustee want to keep both the price paid by Defendant and the asset itself.

To determine the rights of parties to goods in the Debtor's possession at the time a bankruptcy petition is filed, the courts have traditionally analyzed the problem in terms of whether title to the goods has passed under prevailing state law. See *In re Tennessee Forging Steel Corp.* 24 U.C.C. Reptr. 326 (E.D.Tn.1978); *In re Hardwick & Magee Co.*, 11 U.C.C.Reptr. 1172 (E.D.Pa. 1972); *In re C. J. Pearson Company*, 1 B.C.D. 756 (R.I.1975). This is true despite the opening sentence in § 2.401 of the Texas Business and Commerce Code (T.B.C.C.) that the provisions with regard to rights of the buyer apply irrespective of the title. Section 2.401 goes on to state "Insofar as situations are not covered by the other provisions of this chapter and matters concerning title become material the following rules (governing passage of title) apply:" None of the other Article 2 provisions is

dispositive of the issues here.[1] These other Article 2 sections provide additional, not exclusive, remedies to a buyer. If the buyer cannot utilize these sections, the pre-Code rule remains applicable "... so that the buyer can recover the goods if he can prove he has title." Note, *Bankruptcy and Article Two of the Uniform Commercial Code: The Right to Recover Goods Upon Insolvency,* 79 Harvard Law Review 598, 601 (1966). See also *In re C. J. Pearson Company,* supra; 4 *Collier on Bankruptcy* ¶ 541.08 (15th ed. 1981); Schrag and Ratner, *Caveat Emptor-Empty Coffer: The Bankruptcy Law Has Nothing to Offer,* 72 Columbia Law Review 1147 (1972). Therefore, Defendant must establish that title to the pump jack passed to him.

T.B.C.C. § 2.401(b) provides that, unless the parties otherwise agree, "... title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods ..." The testimony regarding the Debtor's delivery obligations reveals the Debtor was to deliver the incomplete pump jack to one corner of its workshop. Both the Debtor and Defendant anticipated that the Defendant would take over the Debtor's premises on May 1 and form a new company which would complete the unit. Debtor also agreed to follow the unit to the well site for installation but at no time did it agree to physically deliver the unit to the site.

I find the Debtor completed its delivery obligations. The statutory language bases title passage on the event of the physical delivery of the goods, not on the completion of any agreed performance after the goods are delivered. See *In the Matter of Kokomo Times Publishing and Printing Corp.,* 301 F.Supp. 529 (S.D.Ind.1968). One disturbing aspect of the Debtor's behavior is that it continued to work on the pump jack up to the moment the business was closed although the Debtor's president testified that Defendant bought the pump jack in its state as of April 23 and was to complete the pump jack when he took over the Debtor's premises. These facts are consistent with the anticipated continuation of the business on the same premises by basically the same personnel in a new corporate structure. I find the continued work does not in and of itself mean that the Debtor did not complete its obligations concerning the physical delivery of the goods.

■ Although title to the pump jack passed to Defendant, the Trustee[2] urges that the sale is void under the provisions of T.B.C.C. § 2.402(b) which provides, "A creditor ... may treat a sale ... as void if as against him a retention of possession by the seller is fraudulent ... except that retention of possession in good faith and current course of trade by a merchant-seller for a commercially reasonable time after a sale ... it not fraudulent." The Debtor was a merchant-seller.[3] It was to retain the pump jack only seven days before Defendant was to take over Debtor's premises and complete the unit. Considering the delivery agreement, the nature of the unit which is a large and heavy piece of equipment, the anticipated take over of the premises by the Defendant, and the short period of time before that take over, I find the retention was for a commercially reasonable time and the sale is not invalid under T.B.C.C. § 2.402(b).

■ The Trustee also urges that T.B.C.C. § 2.402(c) provides that nothing in Chapter 2 is to impair the rights of creditors of the seller under the provisions of Article 9 dealing with secured transactions. That argument fails since § 9.307(a) specifically pro-

---

1. Sections 2.502, 2.711, and 2.716 all provide limited remedies for a buyer who obtains a special property interest in the goods by identification of those goods to the contract under T.B.C.C. § 2.501. Defendant has not alleged nor do the facts indicate that any of these Article 2 provisions are applicable.

2. The trustee is given the status of a judicial lien creditor as well as the right to avoid any transfer voidable under state law by an unsecured creditor. § 544 Bankruptcy Code.

3. Merchant is defined as "... a person who deals in goods of the kind ..." U.C.C. § 2-104(1). The Debtor manufactured and sold oil field pump jacks.

**420**

vides "A buyer in ordinary course of business (Subdivision (9) of Section 1.201) . . . takes free of a security interest created by his seller even though the buyer knows of its existence." T.B.C.C. § 1.201(9) defines buyer in the ordinary course of business as ". . . a person who in good faith and without knowledge that the sale to him is in violation of the . . . security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind . . ."[4] There is no evidence that a sale to Defendant violated a security interest held by any party or if a sale did constitute such a violation, that Defendant knew it. The Trustee, however, urges that Defendant cannot be a good faith buyer in the ordinary course of business since he knew about the impending bankruptcy. Defendant disputes that he knew about the bankruptcy but it is clear that he knew about the Debtor's precarious financial condition. He agreed to buy the pump jack to supply the Debtor with cash necessary to continue its business. This motive of keeping the Debtor in business does not preclude the Defendant's status as a good faith buyer in and of itself. *Martin Marietta Corp. v. New Jersey National Bank*, 612 F.2d 745 (3rd Cir. 1979). Likewise, the Trustee's argument that the Defendant cannot be a buyer in the ordinary course of business prior to taking delivery of the goods must fail. The Trustee cites *Chrysler Corp. v. Adamatic Inc.*, 59 Wis.2d 219, 208 N.W.2d 97 (1973) as authority for this contention. However, the *Chrysler* court, while holding title had not passed in that particular case, states in dicta that if a buyer has title to the goods, his status as a buyer in the ordinary course of business is not forfeited simply because the seller retains possession of the goods. Indeed, this is the result reached in *Levine v. Ficke*, 5 U.C.C.Reptr. 1059 (N.Y.Sup.Ct.1968).

No one alleges that the price paid was inadequate. The delivery terms are not extraordinary considering that the Debtor had no delivery facilities of its own and that Defendant expected to take over the premises. The sale resembles a fair, arm's-length transaction. Defendant's status as a buyer in the ordinary course of business also defeats the Bank's claim to the pump jack as a secured party. T.B.C.C. § 9.307(a).

The Trustee's final argument is that the attempted transfer of the pump jack should be disallowed as a voidable preference under § 547 of the Bankruptcy Code. The debt was created April 23 when the Defendant paid for the pump jack and is antecedent to the time title to the unit passed. The exact date that delivery occurred and title passed is unclear from the testimony but it was before April 30 when the petition was filed. Section 547(c)(1) of the Bankruptcy Code excepts from recovery as a voidable preference those transfers ". . . (A) intended by the debtor and the creditor . . . to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange. Therefore, a transfer of property by the debtor is not necessarily a preference although consideration for the transfer was paid in advance if it appears that there was in reality only one transaction. 4 *Collier on Bankruptcy* ¶ 547.20 (15th ed. 1981). I find in the case at bar that the parties intended the transfer of title to be a contemporaneous exchange for the consideration paid. The testimony that Defendant paid a fair market price for the pump jack in its stage of completion as of April 23 supports this finding. I further find that the exchange was in fact substantially contemporaneous. Courts have held as substantially contemporaneous a transfer which took place a week after new value was given [see *Dean v. Davis*, 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917)] and a transfer which took place 20 days after new value was given. [see *In re Burnette*, 14 B.R. 795, 8 B.C.D. 255 (Bkrtcy., E.D.Tenn. 1981)]. Here the title was transferred to Defendant sometime within seven days of his paying the required consideration.

---

4. Reading § 9.307(a) and § 1.201(9) in conjunction, its clear the buyer in the ordinary course can know a security interest exists in the property if he does not know a sale to him violates the security interest. T.B.C.C. § 9.307, comment 2.

Having determined that title to the pump jack was in the Defendant at the time of the bankruptcy and that transfer of that title was not a voidable preference under § 547 of the Bankruptcy Code, I order the Trustee to turn the pump jack over to the Defendant. When it is proved that property in the possession of the trustee belongs to a third party, the property should be restored to that party. *In re Universal Medical Services, Inc.,* 460 F.2d 524 (3rd Cir. 1972).

It is so Ordered.