Vicki ABBOTT, et al., Plaintiffs,

v.

BLACKWELDER FURNITURE COMPA-
NY OF STATESVILLE, INC., et
al., Defendants.

Robert LAMBORN, et al., Plaintiffs,

v.

BLACKWELDER FURNITURE COMPA-
NY OF STATESVILLE, INC., et
al., Defendants.

Judy FISHER, et al., Plaintiffs,

v.

BLACKWELDER FURNITURE COMPA-
NY OF STATESVILLE, INC., et
al., Defendants.

Barbara FISK, et al., Plaintiffs,

v.

BLACKWELDER FURNITURE COMPA-
NY OF STATESVILLE, INC., et
al., Defendants.

R. Wendell SHEPPARD, Plaintiff,

v.

BLACKWELDER FURNITURE COMPA-
NY OF STATESVILLE, INC., et
al., Defendants.

Thomas W. PISEL, et al., Plaintiffs,

v.

BLACKWELDER FURNITURE COMPA-
NY OF STATESVILLE, INC., et
al., Defendants.

James P. BANKS, et al., Plaintiffs,

v.

BLACKWELDER FURNITURE COMPA-
NY OF STATESVILLE, INC., et
al., Defendants.

Merrill ARCHARD, et al., Plaintiffs,

v.

BLACKWELDER FURNITURE COMPA-
NY OF STATESVILLE, INC., et
al., Defendants.

Donald R. EMERT, et al., Plaintiffs,

v.

BLACKWELDER FURNITURE COMPA-
NY OF STATESVILLE, INC., et
al., Defendants.

Isse K. AYOUB, et al., Plaintiffs,

v.

BLACKWELDER FURNITURE COMPA-
NY OF STATESVILLE, INC., et
al., Defendants.

Bankruptcy Nos. ST–C–82–183
to ST–C–82–192.

Adv. Nos. 82–0526, 82–0540, 82–0556,
82–0643, 82–0377, 82–0163, 82–0544,
82–0604, 82–0336 and 82–0508.

United States District Court,
W.D. North Carolina,
Statesville Division.

Sept. 6, 1983.

Donald R. Billings, Winston, Salem, for plaintiffs.

J. Samuel Gorham, III, Hickory, N.C., for defendant trustee of the debtor.

Marc R. Gordon, Charlotte, N.C., for defendant International Trading & Investment Co., Ltd.

Daniel G. Clodfelter, Charlotte, N.C., for defendant NCNB Nat. Bank.

## MEMORANDUM AND ORDER

POTTER, District Judge.

THIS MATTER coming on to be heard and being heard before the undersigned United States District Court Judge for the Western District of North Carolina on the 29th day of August, 1983 in the United States Courthouse in Charlotte, North Carolina, upon the appeals by the above-named Plaintiffs from judgments against them in the adversary proceedings below in Bankruptcy Court [1]; and,

The Court being of the opinion that the decision of the Bankruptcy Judge is supported by law and fact and should be affirmed, enters the following Memorandum and Order:

### I. Procedural History

Blackwelder Furniture Company, a discount retail furniture business, (hereinafter "debtor"), filed a voluntary petition under Chapter 11 of the United States Code on December 7, 1979. The debtor's Plan of Reorganization was confirmed by Order of the Bankruptcy Court on April 17, 1980. The Bankruptcy Judge signed *ex parte* the debtor's proposed Order to convert the voluntary Chapter 11 proceedings to a Chapter 7 liquidation on January 27, 1982; jurisdiction was retained for ruling on related matters. On that date, a trustee was appointed to liquidate the Chapter 7 estate.

---

[1]. The cases involving the following plaintiffs have been resolved between the parties and are not encompassed by this Order: Vicki Abbott, ST–C–82–183; Robert Lamborn, ST–C–82–184; Judy Fisher, ST–C–82–185; Barbara Fisk, ST–C–82–186; R. Wendell Sheppard, ST–C–82–187; Thomas W. Pisel, ST–C–82–188. Further, the Court was advised at oral argument that due to settlement the only Defendants who remain in the cases before the Court are Blackwelder Furniture Company, International Trading and Investment Company, Ltd., and NCNB National Bank.

The property claimed by the Plaintiffs was purchased by the debtor from wholesalers between the confirmation of the Reorganization Plan on April 17, 1980 and the conversion to Chapter 7 on January 27, 1982. The Plaintiffs, financing buyers of furniture sold by the debtor, had no knowledge that they were dealing with a business which was operating under a Reorganization Plan.

On September 2, 1982, the Bankruptcy Court held that the Chapter 7 trustee held title to the property claimed by the Plaintiffs and could sell it immediately. On October 15, 1982, this Court denied the Plaintiffs' motion to stay the implementation of that Order. The Court further ordered the trustee to hold in escrow all proceeds* from the sale of the furniture claimed by the Plaintiffs.

II. *Chapter 7: Ex Parte Conversion v. a New Petition*

Under 11 U.S.C. § 1112(a), so long as a "case" remains open, the debtor may convert a Chapter 11 proceeding to a Chapter 7 liquidation unless:

"(1) the debtor is not a debtor in possession

(2) the case is an involuntary case originally commenced under this chapter; or

(3) the case was converted to a case under this chapter on other than the debtor's request."

■ The Plaintiffs contend, as their preliminary argument, that conversion after confirmation of the Reorganization Plan was improper. Although there is no evidence that the Plaintiffs raised this argument below, this Court will discuss the validity of the conversion. A pre-confirmation case remains a "case" until fully administered and closed by the Court. 11 U.S.C. Section 350(a). In the Order of confirmation of April 17, 1980, this "case" was held open while the claims of two consumers under the Reorganization Plan were litigated in Bankruptcy Court and related antitrust litigation was pursued in District Court; it was not "closed" pursuant to Section 350. Therefore, the debtor was not obligated to file a new petition to proceed into Chapter 7 liquidation. 11 U.S.C. § 301.

■ Second, the Plaintiffs maintain that at the time of conversion Blackwelders was not a debtor in possession as defined by the Code, so as to permit conversion. "Debtor in possession" is defined in 11 U.S.C. § 1101(1) as the "debtor except when a person that has qualified under Section 322 of this title is serving as trustee in the case." "Trustee" refers to a "trustee in possession," an operating trustee appointed after the commencement of a Chapter 11 case, but prior to the confirmation of a Reorganization Plan. 11 U.S.C. § 1104. In the case at bar, conversion occurred after confirmation; no such "trustee in possession" was created. Therefore, by statutory definition, the debtor was a "debtor in possession." 11 U.S.C. § 1101(1).

Congress provided the Chapter 11 debtor with the absolute right to accomplish voluntary conversion to a Chapter 7 liquidation without Court approval. 11 U.S.C. § 1112. *See also,* H.R.Rep. No. 95–595, 95th Congress, 1st Sess. 405 (1977); S.Rep. No. 95–989, 95th Congress, 2d Sess. 117 (1978), U.S. Code Cong. & Admin.News, p. 5787. In addition, "on request of a party in interest, and after notice and hearing, the court may convert a case . . . or dismiss a case. . ." 11 U.S.C. § 1112(b). "Party in interest" is not separately defined in the Code; however, in Section 1109(b), Congress indicated the scope of that term: "[a] party in interest, *including the debtor* . . . may raise and may appear and be heard on any issue in a case under this chapter." (Emphasis added).

■ Thus, it would appear from the statute, that a debtor in a voluntary Chapter 11 proceeding is permitted to accomplish a voluntary conversion either with or without Court approval. The Plaintiffs contend that because the debtor obtained a Bankruptcy Judge's approval, failure to provide notice and hearing in accordance with 11 U.S.C. § 1112(b) is fatal to the attempted conversion. This Court disagrees. The legislative history indicates that Congress in-

tended conversion, when sought by a debtor, to be a non-adversarial process; thus, the protection of notice and a hearing is not essential to the validity of such a conversion. The technical noncompliance with Section 1112(b) is harmless error; the conversion to a Chapter 7 liquidation was in the best interest of creditors.

### III. *Administrative Expense*

The Plaintiffs maintain that their claims, arising between Chapter 11 confirmation and Chapter 7 conversion are administrative expenses of an estate, entitled to first priority in payment under 11 U.S.C. § 507(a)(1). Administrative expenses are those operating expenses necessary to preserve an estate. 11 U.S.C. § 503(b)(1)(A). The argument for treatment of debts incurred between confirmation and conversion as administrative expenses was raised most recently in the case *In re Westholt Manufacturing, Inc.*, 6 C.B.C.2d 1068, 1072, 20 B.R. 368 (Bkrtcy.D.Kan.1982):

> "At confirmation, all the property of the estate is vested in the debtor, thereby terminating the [Chapter 11] estate's existence, although the court has continued jurisdiction under section 1142 to oversee the plan's execution. Thus, taxes incurred by the debtor in possession after confirmation are to be treated as pre-[chapter 7]-petition claims in a subsequent conversion of the case."

The Court in *Westholt* then quoted 11 U.S.C. § 348(d) which provides that:

> "a claim against the ... debtor that arises after [confirmation] but before conversion in a case that is converted under section 1112 or 1307 of this title, other than [an administrative expense claim] shall be treated for all purposes as if such claims had arisen immediately before the date of the filing of the petition."

At issue in *Westholt* was a claim for taxes incurred during the time period between confirmation and conversion. The Government maintained that the taxes were an administrative expense of the estate, entitled to first priority under 11 U.S.C. § 507(a)(1). However, the court held that no estate existed during this time period to generate expenses; thus, the taxes were held to be pre-petition debts entitled to sixth priority under 11 U.S.C. § 507(a)(6). The court in *Westholt* distinguished between the existence of an estate to be administered by a trustee and a case, over which a court may retain ongoing jurisdiction.

■ Plaintiffs' quest for priority treatment of their claims against the debtor's estate in bankruptcy as administrative expenses fails for identical reasons. Plaintiffs' claims arise from purchases made by the debtor in possession while operating under the Reorganization Plan. There was no Chapter 11 estate after confirmation to generate administrative expenses.

### IV. *The Chapter 7 Estate*

The holding in *Westholt*, that no estate existed during the period between confirmation and conversion to incur administrative expenses, must be distinguished from Plaintiffs' argument that property acquired by the debtor in possession during this period could not become part of the Chapter 7 estate to be liquidated pursuant to a subsequent conversion. Upon the filing of a new Chapter 7 petition (which the court in *Westholt* deemed to have occurred upon conversion), a new estate is created to include all the property then held by the debtor in possession. "[C]ommencement of a case under section 301, 302, or 303 of this title creates an estate." 11 U.S.C. § 541(a). Upon the creation of this estate, the Chapter 7 trustee is directed to:

(1) collect and reduce to money the property of the estate for which such trustee serves, and close up such estate as expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

\* \* \* \* \* \*

(6) unless the court orders otherwise, furnish such information concerning the

estate and the estate's administration as is requested by a party in interest;

\* \* \* \* \* \*

(8) make a final report and file a final account of the administration of the estate with the court.

11 U.S.C. § 704.

Therefore, unless the Plaintiffs prove that title to the disputed property lies with the prepaying consumers, the merchandise acquired by the debtor in possession while operating under a confirmed Reorganization Plan is properly within the subsequently created Chapter 7 estate, and is subject to liquidation by the trustee. The passage of title to property in the debtor's possession upon bankruptcy has been held to be determinative of the parties' rights by a majority of courts. *See, In re Fritz-Mair Manufacturing Co.,* 16 B.R. 417, 33 U.C.C. Rep. 554 (Bkrtcy.N.D.Tex.1982); *In re Chemtoy Corp.,* 19 B.R. 475, 33 U.C.C.Rep. 1635 (N.D.Ill.1982); *In re Fulghum Constr. Corp.,* 32 U.C.C.Rep. 798 (M.D.Tenn.1981); *In re Forging Steel Corp.,* 24 U.C.C.Rep. 326 (E.D.Tenn.1978); *In re Hardwick & Magee Co.,* 11 U.C.C.Rep. 1172 (E.D.Pa.1972).

## V. *Title to the Furniture*

On September 2, 1982, the Bankruptcy Court below entered the following conclusions of law:

"3. Title passed to those customers who personally appeared at the debtor's showroom, selected stock items from the floor, had those specific items tagged by an employee of the debtor as 'sold' to them, and paid for such items in full.

\* \* \* \* \* \*

4. Title passed to those customers who contracted with the debtor to have the manufacturer ship directly to them.

\* \* \* \* \* \*

5. Title to the furniture ordered by all remaining plaintiffs has not passed to such plaintiffs but remains vested in the debtor:

A. In all situations where delivery was to be effected by either van line or common carrier, title did not pass to the customer because the debtor was required or authorized to ship the furniture to the customer and possession of such furniture by the debtor in its warehouse antecedes 'time and place of shipment' within the meaning of N.C.Gen.Stat. § 25–2–401(2)(a);

B. Time and place of shipment means time and place of actual delivery to the van line or common carrier;

C. In all situations where delivery was to be effected by the debtor's truck, title did not pass to the customer because the debtor was required to deliver the furniture at destination, within the meaning of N.C.Gen.Stat. § 25–2–401(2)(b); and

D. In all situations where delivery was to be effected by customer-pickup, title did not pass to the customer because the debtor had not completed its performance with respect to the physical delivery of the furniture, within the meaning of N.C.Gen.Stat. § 25–2–401(2). Additionally, title did not pass to such customers because no documents of title—the bill of lading—had been tendered to any such customer within the meaning of N.C.Gen.Stat. § 25–2–401(3)(a).

6. Under 11 U.S.C. § 541(a)(1) and (a)(7), the furniture ordered by the plaintiffs described in Paragraph 5 herein comprises a part of the debtor's estate (subject to claims of secured creditors and other priority claimants to the extent such claims are properly established during the course of the administration of this estate).

7. Plaintiffs described in Paragraph 5 herein have no equitable interest in the disputed furniture within the meaning of 11 U.S.C. § 541(d).

8. Plaintiffs described in Paragraph 5 herein are not entitled to possession of the disputed furniture as against the Trustee in bankruptcy or the debtor under any provision or statute of bankruptcy or non-bankruptcy law.

9. Independent of the effect of any provision of the Bankruptcy Code, no plaintiff is entitled to recover possession of the disputed furniture under the provisions of N.C.Gen.Stat. § 25–2–502."

These conclusions of law are well-founded, as documented in the following discussion.

A financing buyer has limited remedies under the state Uniform Commercial Code against an insolvent seller. In North Carolina a buyer is provided, first, with "a special property and an insurable interest in goods" identified to the contract, N.C.Gen. Stat. § 25–2–501, and second, with the right of recovery of such identified goods "if the seller becomes insolvent within ten days after receipt of the first installment on their price." N.C.Gen.Stat. § 25–2–502. The Uniform Commercial Code defines this "special property interest" separately from *title* to property, a concept governed by state law, which passes, unless otherwise agreed, when the performance of the seller is completed with respect to the physical delivery of the merchandise. N.C.Gen.Stat. § 25–2–401(2). Additionally, a buyer has the right of replevin for goods identified to a contract "if after reasonable effort he is unable to effect cover for such goods or the circumstances reasonably indicate that such effort will be unavailing. . . ." N.C.Gen. Stat. § 25–2–716(3). Specific performance is also provided under Section 25–2–716, "where the goods are unique or in other proper circumstances."

▮ The Plaintiffs in the case at bar have not proven the debtor's insolvency within 10 days of receipt of the first installment nor have they presented contractual language to indicate that they had agreed with the debtor to pass title to the merchandise upon signature of the initial contract. Although the Plaintiffs have argued that cover is impossible, that the goods are unique, this Court finds the transactions in question to involve furniture retailed by major manufacturers; the merchandise could be acquired from these manufacturers through other retail furniture businesses.

The issue thus centers upon the effect of the "special property interest" outside the scope of the state-created remedies. This Court holds that the "special property interest" held by a purchaser in goods that have been identified to a contract does not defeat the rights of a trustee in bankruptcy. The priority treatment such an interest receives in state court is a voidable state-created preference. 11 U.S.C. §§ 545, 547(c)(6). The "special property interest" may also be classified as a voidable executory contract under 11 U.S.C. § 365.

The only "interest" that may defeat the trustee in bankruptcy is title to the property, which under North Carolina law, can pass only upon completion of the seller's performance of delivery. N.C.Gen.Stat. § 25–2–401(2).

The judgment of the Bankruptcy Court traced the title provisions (N.C.Gen.Stat. § 25–5–401(2), (3)) of the Uniform Commercial Code precisely. Where the seller had fully performed its delivery duties, or where no such contractual duties existed, the buyers were given title to the merchandise. (Conclusions of Law 3 and 4). However, where delivery duties were part of the contract and had not been completed, no title passed. (Conclusion of Law 5).

In addition to the plain language of the state Uniform Commercial Code supporting the judgment rendered by Bankruptcy Court, there is abundant case law following identical commercial code provisions as adopted by other states. See, *Chemtoy Corp., supra,* (seller retained title to undelivered merchandise where contract silent as to title passage); *Fritz-Mair Mfg. Co., supra,* (seller had completed delivery duties and transferred title by leaving large, heavy machinery on premises also purchased by buyer); *Cessna Finance Corp. v. Millard Aviation,* 13 B.R. 15 (Bkrtcy.D.Neb. 1981) (title did not pass upon receipt of downpayment but only upon delivery of airplane, where contract silent as to title transfer).

The Court rejects the Plaintiffs' contention that an agency relationship existed upon receipt by the debtor of the Plaintiffs'

advance payments. The debtor bore the risk of loss for all merchandise prior to shipment and all transactions involved high volume, unrelated, commercial, buyer-seller contractual negotiations where the seller was acting in its own interest to make a profit at its business venture and not as an agent for the benefit of the principal buyer. Under these circumstances, the title to the contract subject-matter passed upon completion by the seller of its duties regarding physical delivery of the merchandise.

The Plaintiffs also present state common law-created equitable trust doctrines which are inapplicable to the facts of this case. Constructive trusts are implied trusts to correct unjust enrichment, *Huff v. Trent Academy,* 53 N.C.App. 113, 280 S.E.2d 17 (1981), fraud, *Walker v. Walker,* 231 N.C. 54, 55 S.E.2d 801 (1949), and breach of fiduciary duties, *Crew v. Crew,* 236 N.C. 528, 73 S.E.2d 309 (1952). Resulting trusts are implied where express trusts have failed; they are also implied in real estate foreclosure sales where one party buys another's property promising to return it.

A trust or agency theory may be applied to a strict bailment situation; the example provided at oral argument was that of a grain elevator, where the "buyer" of the elevator services holds title to the grain before and after the services are rendered. Title to that grain never passes. Neither theory applies to the case at bar, however, where the seller holds title until the completion of its delivery duties in a series of high-volume, unrelated, commercial transactions.

In the absence of title to the goods, the Plaintiffs have alleged state-created preferences, voidable by the trustee in bankruptcy. 11 U.S.C. §§ 545, 547(c)(6). The Supremacy Clause of the United States Constitution, Article VI, requires that the federal statute govern, where an area of law, such as bankruptcy, has been pre-empted by an act of Congress. This pre-emption is emphasized by the recent addition by Congress of the $900 priority for prepaying consumers. 11 U.S.C. § 507(a)(5). Congress was aware that unless title passed,

the financing buyer was left without recourse upon the bankruptcy of the seller:

> "The fifth priority under H.R. 8200 is new. It has been added as a result of testimony before the Subcommittee on Civil and Constitutional Rights concerning the problems that consumers have encountered with bankrupt retail businesses with whom the consumers have deposited money for goods or services.

> \* \* \* \* \* \*

> A consumer that pays money on a lay-a-way plan or as a deposit on merchandise ... is a general unsecured creditor of the business to which he had given his money.

> \* \* \* \* \* \*

> In order to remedy this problem and to reorganize the position of consumer creditors as different from that of business creditors, the bill provides a priority for consumer creditors of a bankrupt business. The priority is made uniform and not left to the States."

H.R.Rep. No. 595, 95th Cong., 1st Sess. 188 (1977), U.S.Code Cong. & Admin.News 1978, pp. 6148, 6149, House Judiciary Committee comments. (Footnotes omitted, quoted in 3 COLLIER ON BANKRUPTCY ¶ 507.04[5] pp. 507–41—507–42 (Fifteenth Ed.1982).

### VI. *Rights of a Secured Creditor against Financing Buyer*

The title analysis, discussed above in section V, determines the rights of defendant NCNB National Bank, a secured creditor. As to those buyers to whom title never was transferred due to the failure of the performance of delivery duties by the seller, the secured creditor's interest is preserved in the inventory, as if no contract had ever existed between buyer and seller. However, as to those buyers to whom title did transfer upon completion of delivery duties by the seller, the secured creditor's interest is destroyed. Once title in merchandise is transferred to a consumer, it is no longer inventory or collateral.

The Plaintiffs contend that as "buyers in the ordinary course" they take free of the secured creditor's interest under N.C.Gen.

Stat. § 25–9–307(1). However, this argument fails, again based upon the title discussion. "Buyers in the ordinary course" take by sale. N.C.Gen.Stat. § 25–1–201(9). A "sale" requires the passage of title. N.C. Gen.Stat. § 25–2–106(1). Thus, consumers take free of a secured creditor's interest in the debtor's inventory only to the extent that title to the inventory has passed to the consumer.

The Court realizes that from the unsecured Creditors' perspective, Bankruptcy laws result in seemingly inequitable treatment of unsecured creditors who receive little, if any, reimbursement of their loss. Under the usual scenario, the lawyers, the taxing authorities, and the sophisticated creditors, such as banks who have a security interest, invariably pick the carcass clean and little or no meat remains for the unsecured creditors. And, that in essence is what the Plaintiffs are—unsecured creditors—to whom the bankrupt owed property.

However, the Bankruptcy Act was enacted for the purpose of providing an orderly method of distribution among the unsecured creditors what little is left after administrative claims and the secured creditors have recovered the property or proceeds of their security interest. Congress has recognized the problem of unsecured creditors who find themselves in the position of these Plaintiffs, and in an attempt to ameliorate to some extent the loss they have suffered has included a new priority in Section 507(a)(5) which obviously does not make these and other plaintiffs similarly situated whole, but does recognize their plight. However, it also reinforces the opinion of this Court that it was not the intent of Congress that creditors in the Plaintiffs' position shall be entitled to any further consideration than is expressed in Section 507(a)(5).

IT IS THEREFORE ORDERED that the Judgment of the Bankruptcy Court is *AFFIRMED*. The Order of this Court directing the trustee to hold funds in escrow for the Plaintiffs is hereby *VACATED*.