In re WINOM TOOL AND DIE, INC., Debtor.

Bankruptcy No. 89–11954.

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Nov. 1, 1994.

Michael A. Mason, Trustee of Winom Tool and Die, Inc., Michael A. Nedelman, Southfield, MI, for Zacova Industries, Smith Brothers Tool Co. and Conas Equipment.

Leslie K. Berg, Asst. U.S. Trustee.

### OPINION REGARDING OBJECTION TO PROPOSED SETTLEMENT

ARTHUR J. SPECTOR, Bankruptcy Judge.

The Debtor filed for relief under chapter 11 of the Bankruptcy Code on August 21, 1989. The Court entered an order confirming the Debtor's plan of reorganization on July 11, 1992. On April 26, 1994, the case was converted to chapter 7 pursuant to 11 U.S.C. § 1112(b)(8). On June 21, 1994, the chapter 7 trustee filed a settlement stipulation signed by the trustee and General Motors Corporation, under the terms of which General Motors agreed to make payment "on all accounts payable due" the Debtor, subject to General Motors' right to set off from these accounts various amounts that the Debtor owed General Motors. Settlement Stipulation with General Motors at pp. 1–2. The settlement was conditioned on court approval, and the trustee served notice of the settlement on all parties in interest, providing them with an opportunity to object.

Three parties—Zacova Industries, Inc., Smith Brothers Tool Co., and Conas Equipment—availed themselves of this opportunity by collectively filing an objection to the proposed settlement. The objecting parties, who did not hold claims against the Debtor or the estate prior to confirmation but who advanced credit to the Debtor between confirmation and conversion, contended that the claims against General Motors which the trustee seeks to compromise are not estate property. If that contention is correct, then of course the trustee does not have the authority to settle the claims. More important to the objecting parties, who obtained judgments against the Debtor, a determination that the claims at issue are not a part of the chapter 7 estate would enable them to pursue their declared objective of levying those assets without accounting to the trustee for the proceeds of the levy. Because I agree with the objecting parties that the accounts receivable do not belong to the estate, their objection will be sustained.

Section 1141(b) of title 11 states that, "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." Property which vests in the debtor pursuant to this statute is removed from the estate. *See, e.g., In re Chattanooga Wholesale Antiques*, 930 F.2d 458, 462 (6th Cir.1991); *In re Jones*, 152 B.R. 155, 180 (Bankr.E.D.Mich.1993) (citing § 1327(b), which is identical to § 1141(b), for the proposition that, "[u]nless there is a contrary provision in the chapter 13 plan or the order confirming it, property ceases to be property of the estate upon confirmation").

Since neither the Debtor's plan nor the order confirming it "otherwise provided," ownership of all property in the chapter 11 estate was transferred under § 1141(b) from

the estate to the Debtor when the plan was confirmed. The trustee conceded as much, but argued that § 1141(b) was rendered irrelevant when the case was converted. He based this assertion on 11 U.S.C. § 348(a), which provides in pertinent part that "[c]onversion ... constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) ..., does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief." The trustee interprets this language as requiring that the case be deemed a chapter 7 which was filed on the original chapter 11 filing date. *See* Trustee's Response to Objection at ¶ 7A. And since this case is deemed to have been a chapter 7 throughout its life, the trustee's argument continues, those provisions which are specific to chapter 11—and in particular, § 1141(b)—do not apply. *Id. See* 11 U.S.C. § 103(f) (stating that, with an exception not relevant here, "subchapters I, II, and III of chapter 11 ... apply only in a case under such chapter"). Consequently, "the confirmation of the [Debtor's] Chapter 11 plan is undone." *Id.* at ¶ 7B.

The validity of the trustee's construction of § 348 has most frequently been addressed by courts in the context of a conversion to chapter 7 from chapter 13. Whereas this case calls into question whether property removed from the estate by § 1141(b) remains outside of the estate following conversion, the chapter 13/7 cases deal with the issue of whether the debtor's post-petition property acquisitions, added to the estate by virtue of 11 U.S.C. § 1306(a), remain estate property after conversion. Some such cases held that property entering the estate under § 1306(a) is part of the chapter 7 estate, rejecting the trustee's interpretation of § 348. *See, e.g., In re Calder,* 973 F.2d 862, 866 (10th Cir. 1992); *In re Lybrook,* 951 F.2d 136, 137–38 (7th Cir.1991); *In re Schmeltz,* 114 B.R. 607, 610, 20 B.C.D. 864, 23 C.B.C.2d 527 (Bankr. N.D.Ind.1990); *In re Tracy,* 28 B.R. 189, 190, 10 B.C.D. 541, 8 C.B.C.2d 440 (Bankr.D.Me. 1983). Others support the trustee's argument, interpreting § 348 as mandating that the court disregard § 1306(a) for purposes of determining what property belongs to the chapter 7 estate. *See, e.g., In re de Vos,* 76 B.R. 157, 159 (N.D.Cal.1987); *In re Tucker,* 133 B.R. 819, 820–21 (Bankr.W.D.Tex.1991); *In re Figgers,* 121 B.R. 772, 774–75 (Bankr. S.D.Ohio 1990); *In re Payne,* 88 B.R. 818, 821 (Bankr.E.D.Tenn.1988); *In re Erchenbrecher,* 85 B.R. 42, 44 (Bankr.N.D.Ohio 1988); *In re Redick,* 81 B.R. 881, 883–84, 16 B.C.D. 1328, 18 C.B.C.2d 254 (Bankr. E.D.Mich.1987); *In re Lennon,* 65 B.R. 130, 132–35, 15 C.B.C.2d 756 (Bankr.N.D.Ga. 1986); *In re Lepper,* 58 B.R. 896, 898, 14 C.B.C.2d 1040 (Bankr.D.Md.1986); *In re Peters,* 44 B.R. 68, 70, 11 C.B.C.2d 881 (Bankr. M.D.Tenn.1984); *In re Hannan,* 24 B.R. 691, 692, 9 B.C.D. 1151, 7 C.B.C.2d 750 (Bankr. E.D.N.Y.1982). However, the interpretation of § 348 offered by these latter decisions does not withstand scrutiny.

Section 348(a) can be summarized as establishing two rather simple postulates. First, conversion is an order for relief. Second, except as otherwise stated in the statute, references in the Code to the date of the filing of the petition, the commencement of the case, or the order for relief, should be understood to mean the original (i.e., the pre-conversion) date for those events. Although these two basic principles are consistent with the trustee's contention that this case must be analyzed as though it has always been a chapter 7 proceeding, they are also consistent with the view that the court must take cognizance of the pre-conversion status of the case. *See Lybrook,* 951 F.2d at 137 (describing the competing interpretations of § 348 as "equally good alternative[s]"); 1 D. Epstein et al., *Bankruptcy* § 2–17 (1992) ("Section 348 does not provide a clear answer to [the] question" of whether the petition is deemed to have been filed under the converted chapter.).

The reason that § 348(a) neither advances nor refutes the trustee's argument is that it is essentially a nonsubstantive statute, the consequences of which can be understood only by applying its rules to other sections of the Code that make reference to the date of the filing of the petition, the commencement of the case, or the order for relief. Wherever those terms are found in the Code, § 348(a), (b) or (c) specifies the appropriate

date for purposes of that Code provision. *See In re Wanderlich,* 36 B.R. 710, 713–14, 11 B.C.D. 467 (Bankr.W.D.N.Y.1984); *Tracy,* 28 B.R. at 190. Contrary to the trustee's argument, then, there is nothing in § 348(a) which compels the conclusion that the court must pretend that a converted case was originally filed in the chapter to which it was converted. *See Schmeltz,* 114 B.R. at 610; *In re Ford,* 61 B.R. 913, 916, 14 C.B.C.2d 1399 (Bankr.W.D.Wis.1986); *Tracy,* 28 B.R. at 190. There are, however, a number of considerations which support the conclusion that the provisions of chapter 11 are relevant for purposes of determining what property comprises this chapter 7 estate.

■ By taking the position that conversion to chapter 7 reverses what would otherwise be the consequences of a confirmed chapter 11 plan, the trustee is in essence arguing that conversion under § 1112(b) constitutes a *de facto* revocation of the order confirming the plan. Yet 11 U.S.C. § 1144 states categorically that such an order may be revoked "if and only if [it] was procured by fraud," which was never alleged in this case. It is highly unlikely that Congress would so narrowly and explicitly limit the circumstances under which a confirmed plan can be revoked, only to provide for an exception to that rule—in the form of §§ 1112 and 348—which is neither explicit nor self-evident. *See In re T.S.P. Indus.,* 117 B.R. 375, 377–78, 20 B.C.D. 1401 (Bankr.N.D.Ill.1990); *see also Jones,* 152 B.R. at 168 (collecting cases for the proposition "that statutes are to be read harmoniously whenever feasible").

Nor should there be any great mystery as to why § 1144 is so circumspect. Any number of scenarios can and do play out under the terms of a confirmed plan. Credit is extended, assets are sold, corporate entities are created or merged, and so on. Presumably mindful of the intricate chain of events that is often set in motion by the order of confirmation, Congress made the considered choice that only fraud would warrant an attempt to "unscramble the egg," and even then only within the 180–day time frame imposed by § 1144. *Cf. In re Nardulli & Sons Co.,* 66 B.R. 871, 881 (Bankr.W.D.Pa. 1986) ("Absent fraud, parties must be able to rely on the confirmed plan.... [Otherwise,] a confirmed Chapter 11 debtor would be stillborn on the confirmation date. No future creditor would lend money to the Debtor. The creditors would fear that pre-petition security interests could be resurrected.").

Further evidence of Congress' concern about the prospect of trying to undo a *fait accompli* is § 1144's requirement that the revocation order "contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation." 11 U.S.C. § 1144(1). The trustee's theory regarding the consequences of conversion from chapter 11 to chapter 7 undermines the policy of finality that § 1144 clearly is designed to serve.

In this regard, the trustee claimed that in *Redick, supra* p. 615, I "observed that the order confirming the plan and the plan had disintegrated upon conversion." Trustee's Response to Objection at ¶ 7B. But that assertion is incorrect.

*Redick* addressed the question of whether a debtor who converts from chapter 13 to chapter 7 can recover funds that were paid by the debtor to the chapter 13 trustee pursuant to the terms of a confirmed chapter 13 plan, and which at the time of conversion had not yet been paid to chapter 13 creditors as required by the plan. *Redick,* 81 B.R. at 882. I held that neither the chapter 7 trustee nor the debtor was entitled to such funds, as title vested in the chapter 13 creditors upon receipt of the funds by the chapter 13 trustee. *Id.* at 884 and 887. In so holding, I followed the *dictum* in *Lennon, supra* p. 615, a case which had been criticized for failing to recognize that a chapter 13 plan and the order confirming it "disintegrate" upon conversion. *Redick,* 81 B.R. at 886. In essence, my response to this criticism was that, since the plan was in effect and binding when the funds were received by the trustee, the disposition of those funds is controlled by the plan *even if* it is subsequently rendered ineffective by conversion to chapter 7. *Id.* at 886–87. The validity of the "disintegration" theory was not outcome-determinative in *Redick,* and I neither accepted nor rejected the theory in that case.

Although the trustee miscited *Redick*, there is a good deal of authority for the conclusion that conversion to chapter 7 invalidates a confirmed chapter 13 plan. *See, e.g., In re Green*, 169 B.R. 480, 481–82 (Bankr. S.D.Ga.1994); *In re Boggs*, 137 B.R. 408, 410 (Bankr.W.D.Wash.1992); *Peters*, 44 B.R. at 73; *In re Doyle*, 11 B.R. 110, 111, 7 B.C.D. 1010, 4 C.B.C.2d 588 (Bankr.E.D.Pa.1981); 5 *Collier on Bankruptcy* ¶ 1307.01[8] (15th ed. 1993). This conclusion seems pertinent here, inasmuch as chapter 13 has a provision which, though not as explicit as § 1144, likewise limits revocation of a confirmation order to circumstances involving fraud. *See* 11 U.S.C. § 1330(a). But there are considerations which limit the relevance of these cases.

Whether assets continue to be part of the estate following confirmation of a chapter 11 or 13 plan hinges on whether there is a provision in the plan or confirmation order to that effect. *See supra* p. 2 (citing 11 U.S.C. §§ 1141(b) and 1327(b)). Even if there is no such provision, some courts have held that property which is necessary to carry out the chapter 13 plan remains in the estate notwithstanding § 1327(b). *See* 2 K. Lundin, *Chapter 13 Bankruptcy* § 6.16 at n. 205 and accompanying text (2d ed. 1994) (collecting cases). If the estate does retain property post-confirmation, it appears that that property is, in the event of conversion to chapter 7, distributed in accordance with the provisions of chapter 7 rather than the plan of reorganization. *See Chattanooga Wholesale Antiques*, 930 F.2d at 463 (dictum).

The principle that the distribution scheme of chapter 7 controls over contrary provisions in a pre-conversion reorganization plan is inapplicable here, as I hold that the assets in question do not belong to the chapter 7 estate.[1] But it is unclear from *Green* and the other cases cited whether the estate retained any property following plan confirmation. To the extent that property remained in the estate post-confirmation, those cases are not on point.

A more fundamental problem with analogizing to these cases concerns the debtor's discharge. By definition, an otherwise enforceable debt is not rendered invalid until it is discharged. Prior to discharge, then, a provision in a confirmed plan which proposes to reduce the amount of a creditor's claim—e.g., by obligating the debtor to pay just 10% of that claim—only suspends the creditor's ability to enforce the preconfirmation claim, rather than extinguishing the claim. *See Smith v. No. 2 Galesburg Crown Finance Corp.*, 615 F.2d 407, 411 (7th Cir.1980) ("[W]hen a debtor fails to complete payment under a Wage Earner's Plan [i.e., a plan under chapter XIII of the former Bankruptcy Act, which is the pre-Code analog to chapter 13], the entire original claim of the creditor is revived."); 5 *Collier* at ¶ 1327.01[1] ("Upon failure by the debtor to satisfy claims in accordance with the provisions of the confirmed plan or to obtain a discharge under section 1328(b), allowed claims remain due and owing, except to the extent that actual payment was in fact made...."). Thus if a reorganization case is converted to chapter 7 after plan confirmation but prior to discharge, the plan may well be rendered invalid, at least insofar as it purports to compromise the claims of creditors. *See Smith*, 615 F.2d at 411; *In re Shaffer*, 48 B.R. 952, 955, 12 B.C.D. 1268 (Bankr.N.D. Ohio 1985); 5 *Collier* at ¶ 1327.01[1] ("A composition plan under chapter 13 ... ultimately binds creditors only to the extent that there is compliance by the debtor with the payment terms of the plan, unless the court grants a discharge under section 1328(b).").

---

**1.** The assertion in *In re Midway, Inc.*, 166 B.R. 585, 590 (Bankr.D.N.J.1994), upon which the United States trustee relies, that "reading [the Code as providing that assets revested in the debtor under § 1141(b) do not become property of the estate upon conversion to chapter 7] ignores the provisions of chapter 7 providing for distribution of estate property" puts the cart before the horse. The Code's distribution provisions can only pertain to property of the estate; the determination of what is property of the estate must logically precede distribution questions. Furthermore, in *Midway*, the parties apparently stipulated that "the debtor's interest in the accounts receivable is property of the converted chapter 7 estate." *Id.* Thus, in contrast to the situation here, "[n]o party ... argued [in *Midway*] that the accounts receivable are not property of the estate." *Id.* at n. 9. Thus the entire discussion in *Midway* is mere *dictum*.

This caveat is important because, whereas chapter 11 debts are generally discharged on confirmation, *see* 11 U.S.C. § 1141(d)(1)(A), with the exception of a hardship discharge (§ 1328(b)), chapter 13 debts are not discharged until all plan payments are made. *See* 11 U.S.C. § 1328(a). Accordingly, those cases which hold that chapter 13 plans terminate upon conversion to chapter 7 are distinguishable. In a case such as this, where the post-confirmation conversion occurs after a discharge has been entered and neither the plan nor the confirmation order prevents vesting of estate property in the debtor, the better view is that the plan remains valid notwithstanding the conversion. *See, e.g., In re Laing,* 31 F.3d 1050, 1051 (10th Cir.1994) (The debtor's "confirmed Chapter 11 plan binds him as a final judgment ... even though the Chapter 11 bankruptcy was later converted to Chapter 7."); *In re Pierce Packing Co.,* 169 B.R. 421, 429 (Bankr. D.Mont.1994); *In re Blanton Smith Corp.,* 81 B.R. 440, 444 (M.D.Tenn.1987); *Nardulli & Sons,* 66 B.R. at 881; *cf. Vogel v. Russell Transfer,* 852 F.2d 797, 799 (4th Cir.1988) ("A conversion to Chapter 7 does not undo what was by court order achieved by the Chapter 11 confirmation...." (citations omitted)). *But see In re Reef Petroleum Corp.,* 99 B.R. 355, 360, 19 B.C.D. 619 (Bankr.W.D.Mich.1989) (suggesting that the continued validity of a confirmed chapter 11 plan following conversion to chapter 7 should be assessed on a case-by-case basis).

The trustee's position with respect to the post-conversion validity of § 1141(b) is further undermined by 11 U.S.C. § 349(b). That section states as follows:

Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—

(1) reinstates—

(A) any proceeding or custodianship superseded under section 543 of this title;

(B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2), or 551 of this title; and

(C) any lien voided under section 506(d) of this title;

(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

On its face, this statute makes clear that dismissal of a case will in certain respects restore the *status quo ante,* effectively voiding transfers of property interests that would otherwise be binding. The fact that § 349 is so explicit in this regard, whereas the section immediately preceding it—§ 348—is devoid of such detail, reinforces the inference that conversion does not "unravel" historical events. *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 432, 107 S.Ct. 1207, 1213, 94 L.Ed.2d 434 (1987) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks and citations omitted)); *In re Lybrook,* 107 B.R. 611, 613 (Bankr. N.D.Ind.1989), *aff'd,* 135 B.R. 321 (N.D.Ind. 1990), *aff'd,* 951 F.2d 136 (7th Cir.1991) (Section 348 "should not be read as a nullification act. It is not designed to change" pre-conversion events.); *Ford,* 61 B.R. at 916 ("[A]ctions taken in the case prior to conversion [do not] become nullities" under § 348(a).); *id.* at 916 n. 4 (observing that the Advisory Committee Note to F.R.Bankr.P. 1019 states that the rule "implements § 348 ... [and] is not intended to invalidate any action taken in the superseded case before its conversion to chapter 7").

The trustee's argument that this case should be treated as though it were always a chapter 7 is also contrary to *Chattanooga Wholesale Antiques, supra* p. 614. In that case, the chapter 7 trustee sought to recover preconversion payments that were made to a creditor under the terms of a confirmed chapter 11 plan. 930 F.2d at 460, 462. In asking for this relief, the trustee relied on 11 U.S.C. § 549(a), which generally permits the trustee to avoid a post-petition "transfer of property of the estate— ... that is not authorized under [title 11] or by the court."

*See id.* The court rejected the trustee's claim because the payments in question were made not with estate property, but rather with funds that had vested in the debtor pursuant to § 1141(b). *See id.* at 462. Thus while the court did not address the impact of § 348, it implicitly recognized the principle that property which exits the chapter 11 estate under § 1141(b) does not reenter the chapter 7 estate in the event of conversion.

In contrast to *Chattanooga Wholesale Antiques,* the assets at issue here have not been transferred by the Debtor to a third party. But that distinction is significant only if one is prepared to accept the proposition that the issue of whether property which leaves the estate under § 1141(b) becomes a part of the converted chapter 7 estate turns on whether the debtor still happens to be in control of that property on the date of conversion. The Bankruptcy Code provides no support for that proposition, and I therefore believe that *Chattanooga Wholesale Antiques* cannot be distinguished on that basis.

Another factor militating against the trustee's interpretation of § 348 is its inherent implausibility. At the risk of sounding simplistic, one would expect that a case which was converted from chapter 11 to chapter 7 will be analyzed as just that—a case which was converted from chapter 11 to chapter 7. The notion that conversion gives rise to the legal fiction that the case was always a chapter 7 is conceptually awkward, and there is no readily apparent reason why reality must be ignored in this fashion.

To the contrary, it appears that the Code implicitly rejects the trustee's point of view. Section 726(b) of title 11 provides that an administrative expense "incurred under [chapter 7] after ... conversion has priority over [an administrative expense] incurred under any other chapter or [chapter 7] before ... conversion." If cases that have been converted to chapter 7 are to be treated as though they had always been a chapter 7, there would be no need for this statute to refer to pre-conversion expenses "incurred under any other chapter" because that could never happen: by definition, *all* such expenses would be incurred under chapter 7. The fact that § 726(b) is worded as it is

suggests that conversion does not "relate back" to the commencement of the case pursuant to § 348. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 112, 111 S.Ct. 2166, 2172, 115 L.Ed.2d 96, 107 (1991) ("[W]e construe statutes, where possible, so as to avoid rendering superfluous any parts thereof.").

The trustee asserted that invalidation of § 1141(b) "is consistent with the effect of conversion on the discharge of [§] 1141(d). Corporations are not entitled to a discharge under Chapter 7. It must, therefore, be concluded that the conversion renders ineffective the discharge provisions of [§] 1141(d) and vitiates the corporate discharge resulting from the plan confirmation, because this is a case under Chapter 7 of the Code and corporations are not entitled to a discharge under Chapter 7." Trustee's Response to Objection at ¶ 7B. This argument assumes that the Debtor's discharge under § 1141(d) was obtained while the case was a chapter 7 proceeding, rather than while it was a chapter 11 proceeding. That assumption is true only if the trustee is correct in asserting that the case must be deemed to have been a chapter 7 proceeding from its inception. Thus the fatal flaw in the trustee's argument is that it assumes the point in controversy.

The trustee also invoked F.R.Bankr.P. 1019(5), which establishes certain filing requirements in cases converted to chapter 7. That rule states in pertinent part as follows:

[E]ach debtor in possession or trustee in the superseded case shall ... file and transmit to the United States trustee a final report and account.... If the conversion order is entered after confirmation of a plan, the debtor shall file ... a schedule of property not listed in the final report and account acquired after the filing of the original petition but before entry of the conversion order....

The trustee argued that this paragraph supports his contention that it makes no difference "whether the assets were generated pre or post confirmation," and that all such assets "are property of the estate and therefore part of the converted Chapter 7 estate." Trustee's Response to ·Objection at ¶ 7C.

In essence, the trustee's rationale appears to be that assets acquired post-petition and pre-conversion belong to the estate because Rule 1019(5) requires that such assets be listed or scheduled. One big problem with this rationale is that the federal bankruptcy rules cannot invalidate the transfer of property interests pursuant to § 1141(b); only another statutory provision could do that. *See* 28 U.S.C. § 2075 (The bankruptcy "rules shall not abridge, enlarge, or modify any substantive right."); *see also, e.g., White v. Boston*, 104 B.R. 951, 954 n. 3 (S.D.Ind.1989) ("[T]he [bankruptcy] Rule[s] cannot 'abridge, enlarge, or modify' any substantive provision of the Bankruptcy Code. 28 U.S.C. § 2075.... To the extent a Rule contradicts a statute, the Rule is invalid."); *In re Roberts*, 68 B.R. 1004, 1006, 15 B.C.D. 563, 16 C.B.C.2d 498 (Bankr.E.D.Mich.1987). Thus even if the trustee were correct in arguing that Rule 1019(5) is premised on the assumption that the chapter 7 estate includes all property acquired in the interim between the commencement of the case and conversion to chapter 7, I could and would reject that premise. It is quite clear, in any case, that the trustee is reading far too much into Rule 1019(5), as a simple example will demonstrate.

Assume that after filing for chapter 11 relief, the debtor acquires an interest in an ERISA-qualified pension plan. The case is subsequently converted to chapter 7. Application of the trustee's analysis to these facts would lead to the conclusion that the pension plan is estate property, since a literal interpretation of Rule 1019(5) mandates that that asset be disclosed. That conclusion is patently wrong because, even if one assumes that the debtor's interest would otherwise be within the scope of 11 U.S.C. § 541(a), it is excluded from the estate by operation of 11 U.S.C. § 541(c)(2). *See Patterson v. Shumate*, 504 U.S. ——, ——, 112 S.Ct. 2242, 2250, 119 L.Ed.2d 519, 532 (1992).

The reason the trustee's methodology produced the wrong answer in this hypothetical is simple: Rule 1019(5) does not purport to establish ground rules for determining whether a particular asset or class of assets is or is not estate property. Because it does nothing more than require that property acquisitions be disclosed, it would be silly to consult Rule 1019(5) for purposes of interpreting and applying § 1141(b), § 541(c)(2), or any other Code provision which defines the limits of the bankruptcy estate. I therefore see no merit to the trustee's argument that Rule 1019(5) justifies the conclusion that any post-petition, pre-conversion property acquisition inures to the estate's benefit. As expressly stated by the Advisory Committee on Bankruptcy Rules, *see supra* p. 618, Rule 1019(5) is not designed to disrupt pre-conversion actions.

Ironically, there are provisions in Rule 1019 and other bankruptcy rules which actually tend to undermine the trustee's theory. Pursuant to F.R.Bankr.P. 1019(3), "[a]ll claims actually filed by a creditor [prior to conversion to chapter 7] shall be deemed filed in the chapter 7 case." Under F.R.Bankr.P. 1019(1)(A), "[l]ists, inventories, schedules, and statements of financial affairs" filed prior to conversion to chapter 7 "shall be deemed to be filed in the chapter 7 case." *See also* F.R.Bankr.P. 1007(c) ("Schedules and statements previously filed in a pending chapter 7 case shall be deemed filed in a superseding case...."). These rules would seem to be redundant if converted cases are deemed by virtue of § 348 to have been filed under the chapter to which the case converts.

The trustee subsequently argued that certain Code provisions and bankruptcy rules would be "ineffective" if property vesting in the debtor under § 1141(b) did not revest in the estate upon conversion to chapter 7. He argued, for example, that there would be no point in allowing the chapter 7 trustee of a converted chapter 11 case an opportunity to assume or reject executory contracts, *see* 11 U.S.C. §§ 348(c) and 365(d)(1), if all property of the estate remained in the debtor after conversion.

This argument assumes that recognizing the post-conversion validity of vesting under § 1141(b) means that the chapter 7 estate can never "inherit" property interests from the pre-conversion chapter 11 estate. That assumption is wrong for two reasons. First,

§ 1141(b) never even comes into play if conversion occurs before a plan is confirmed.

Second, to the extent that the plan or confirmation order so provides, property of the chapter 11 estate does not vest in the debtor—and hence would become a part of the chapter 7 estate if the case converts. I therefore reject the trustee's assertion that certain Code provisions or bankruptcy rules would be rendered meaningless if conversion did not divest the debtor of property interests acquired pursuant to § 1141(b).

For the reasons stated, I hold that property which vests in the debtor under § 1141(b) does not revest in the estate upon conversion to chapter 7. *See In re Pauling Auto Supply,* 158 B.R. 789, 795 (Bankr.N.D.Iowa 1993); *In re T.S. Note Co.,* 140 B.R. 812, 813–14 (Bankr.D.Kan.1992); *In re H.R.P. Auto Center,* 130 B.R. 247, 256 (Bankr. N.D.Ohio 1991); *T.S.P. Indus.,* 117 B.R. at 377–78; *see also Chattanooga Wholesale Antiques,* 930 F.2d at 462; *cf. Jones,* 152 B.R. at 180 and 182 n. 34 (Section 348 does not reinstate liens voided under 11 U.S.C. § 506(d) when a case is converted from chapter 13 to chapter 7, even though the Supreme Court ruled that chapter 7 debtors cannot use § 506(d) to invalidate liens.); *Nardulli & Sons,* 66 B.R. at 881 ("Section 348 does not imply the revocation of the confirmation order . . . .").

The United States trustee filed a statement which suggested that it would be inequitable for a number of reasons to rule that the Debtor's post-confirmation property interests remain outside the converted chapter 7 estate. And many courts which have confronted the problem of defining the parameters of a post-conversion estate have taken general policy concerns into consideration. My holding, however, is not based on such considerations.

The primary reason for this is that § 1141(b) is relatively straightforward, does

not lead to absurd results if literally applied, and is not contradicted by § 348 or any other Code provision. Under such circumstances, my task is to apply the statute as written. *Cf. In re Columbia Gas Systems,* 33 F.3d 294, 302 (3d Cir.1994) ("Our obligation is limited to one of statutory interpretation; when a statute is clear and unambiguous, policy arguments cannot deflect us from that interpretation.").

A second reason why I steer clear of policy considerations is that § 1141(b) does not mandate the vesting of estate property in the debtor. By its own terms, that statute permits the plan or the order confirming it to preclude such vesting. Accordingly, those courts which are so inclined can routinely specify in confirmation orders that certain (or all) property is to remain in the estate. *Cf. In re Bartlett,* 149 B.R. 446, 447 n. 1 (Bankr.W.D.Tex.1992) ("In this district, the order of confirmation does not revest property of the estate in the debtor . . . [under] § 1327(b)."); 2 K. Lundin, *Chapter 13 Bankruptcy* § 6.16 (2d ed. 1994) ("[I]t is the practice in some jurisdictions that all Chapter 13 plans contain a provision preserving the estate until *consummation* of the plan. This approach preserves the debtor's argument that all of the debtor's property . . . remains property of the estate . . . notwithstanding confirmation and the 'vesting' effect of § 1327(b)."). And as pointed out by the objecting parties here, a party in interest is free under § 1141(b) to negotiate for plan terms which protect that party from any perceived dire consequences of vesting.[2] Thus policy debates concerning the impact of § 1141(b) are misplaced, as that statute is in essence policy-neutral.

█ As an alternative to his argument that this case should be analyzed as though it were always a chapter 7, the trustee asserted that *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984),

**2.** Like any other legal document, a proposed plan of reorganization must be closely scrutinized. Each creditor in reviewing the plan should engage in a series of "what if" questions. What if the debtor defaults? What if the case is converted? What if the case is dismissed? If the creditor does not like the answers to these questions (or if there are no clear answers), she

should negotiate for terms that address her concerns. She may, for example, demand a security interest in post-confirmation assets, or stock in the reorganized debtor so as to be in a position to exercise control over management. And of course a creditor may insist on a provision that some or all of the assets of the estate are not to vest in the debtor upon confirmation.

dismissed "the notion that separate entities were created by a Chapter 11 filing. It is, thus, always the same entity throughout the case.... As a result all assets generated during the case are property of the estate pursuant to 11 USC 541(a)(6) and (a)(7)." Trustee's Response to Objection at ¶ 7C.

With an important exception to be discussed *infra*, § 541(a)(6) includes as part of the estate "[p]roceeds, product, offspring, rents, or profits of or from property of the estate." Under § 541(a)(7), the estate also includes "[a]ny interest in property that the estate acquires after the commencement of the case." If the trustee is correct in arguing that the post-petition chapter 11 debtor has no identity separate from his status as debtor in possession, then it would follow that any property interests arising post-petition fall within the reach of § 541(a)(6) and/or § 541(a)(7). As will be explained, however, I believe that the trustee's premise is false.

In *Bildisco*, the Court confronted the issue of "whether the NLRB can find a debtor-in-possession guilty of an unfair labor practice for unilaterally rejecting or modifying a collective-bargaining agreement before formal rejection by the Bankruptcy Court." 465 U.S. at 527, 104 S.Ct. at 1196. The part of the opinion upon which the trustee presumably relies states as follows:

> Much effort has been expended by the parties on the question of whether the debtor is more properly characterized as an "alter ego" or a "successor employer" of the pre-bankruptcy debtor, as those terms have been used in our labor decisions.... *We see no profit in an exhaustive effort to identify which, if either, of these terms represents the closest analogy to the debtor-in-possession.* Obviously if the latter were a wholly "new entity," it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts, since it would not be bound by such contracts in the first place. *For our purposes,* it is sensible to view the debtor-in-possession as the same "entity" which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and proper-

ty in a manner it could not have employed absent the bankruptcy filing.

*Id.* at 527–28, 104 S.Ct. at 1197 (emphasis added).

This passage does imply that the debtor and debtor in possession are one and the same. But the highlighted portion of the text makes clear that the Court passed on the opportunity to render a definitive analysis of that issue, and that it was limiting its "same-entity" conclusion to the facts before it. *Bildisco* therefore leaves open the possibility that distinctions between the debtor and the debtor in possession may be appropriate in other contexts. *Cf., e.g., In re Fastrax, Inc.,* 129 B.R. 274, 276 (Bankr. M.D.Fla.1991) ("While it is true that *for certain purposes,* the Debtor and debtor-in-possession are legally distinct entities, ... § 365 [governing assumption or rejection of executory contracts] would be rendered meaningless" by that proposition. (emphasis added)). And for a number of reasons, such a distinction is both logical and unremarkable.

The debtor in possession is a trustee. *See* 11 U.S.C. §§ 323(a) and 1107(a); *see also, e.g., In re Triangle Chemicals,* 697 F.2d 1280, 1284 (5th Cir.1983). Outside of bankruptcy, courts recognize that an entity can have its own legal identity separate and apart from its status as a trustee. *See, e.g., Bankers Trust Co. of Muskegon v. Forsyth,* 266 Mich. 517, 521, 254 N.W. 190 (1934). To the extent that the Code does not suggest otherwise, this concept remains viable in bankruptcy. *Cf. Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 351–52, 105 S.Ct. 1986, 1992, 85 L.Ed.2d 372 (1985) ("Because the attorney-client privilege is controlled, *outside of bankruptcy,* by a corporation's management, the actor whose duties most closely resemble those of management should control the privilege in bankruptcy, unless such a result interferes with policies underlying the bankruptcy laws." (emphasis added)); *In re Hunt,* 153 B.R. 445, 451, 28 C.B.C.2d 1434 (Bankr.N.D.Tex.1992) (citing *Weintraub* as standing for the proposition "that bankruptcy problems should be analyzed by the same principles that would govern analogous nonbankruptcy situations"); W. Mitchelson, *Waiver of the Attor-*

*ney–Client Privilege by the Trustee in Bankruptcy,* 51 U.Chi.L.Rev. 1230, 1233 (1984) ("[T]he proper way to gauge the effect of ... changes [brought about by bankruptcy] on the rights of parties involved in a bankruptcy proceeding is to analogize the change to a similar event in nonbankruptcy law and then to use this analogy to establish the substantive rights of the parties in bankruptcy." (*quoted in Hunt,* 153 B.R. at 451 n. 9)). The concept was unequivocally accepted by the Sixth Circuit in a pre-Code, chapter XI case involving a debtor in possession. *See In re Cle–Ware Indus.,* 493 F.2d 863, 870 (6th Cir.), *cert. denied,* 419 U.S. 829, 95 S.Ct. 50, 42 L.Ed.2d 53 (1974) ("The debtor and debtor in possession are treated as separate and distinct entities.... [T]he debtor does not cease to exist as such when he files his petition for arrangement and spontaneously becomes a debtor in possession. The two entities exist side by side until the conclusion of the proceeding." (quoting A. Herzog, *Bankruptcy Law—Modern Trends,* 37 Ref.J. 110–12 (1963))).[3] And there is nothing in the Code to suggest that *Cle–Ware's* analysis is outmoded. Indeed, recognizing the duality of the debtor in possession is sometimes necessary to make sense of the Code.

Suppose, for example, that the debtor in possession exercises his right under 11 U.S.C. §§ 1107(a) and 554(a) to abandon unencumbered property that belonged to the debtor pre-petition. Since abandoned property ceases to be part of the estate, *see, e.g., In re Killebrew,* 888 F.2d 1516, 1520 (5th Cir.1989), the debtor in possession no longer holds an interest in the property. That being the case, the only entity who can legitimately lay claim to the property is the debtor. Thus this clearly presents a situation in which the debtor, acting in his capacity as debtor in possession, abandons property which revests in the debtor *qua* debtor. *See, e.g., In re Service,* 155 B.R. 512, 515 (Bankr.

E.D.Mo.1993) (describing abandonment as "typically" involving a situation in which "the trustee or debtor-in-possession releases the [abandoned] property to the debtor").

Consider also § 541(a)(6), which provides that the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." This statute precludes such earnings from becoming a part of an individual chapter 11 debtor's estate. *See, e.g., In re Berke,* 837 F.2d 293, 295 (7th Cir.1988); *In re Fitz–Simmons,* 725 F.2d 1208, 1210–11 (9th Cir. 1984); *In re Molina Y Vedia,* 150 B.R. 393, 397–98 (Bankr.S.D.Tex.1992); *In re El–Amin,* 126 B.R. 855, 860 (Bankr.E.D.Va. 1991). Since that is so, one must accept the premise that at least for certain purposes an individual chapter 11 debtor wears two hats: that of debtor in possession (who holds title to all property vested in the estate), and that of debtor (holding title to non-estate property). *Cf. In re Myrvold,* 44 B.R. 202, 204 (Bankr.D.Minn.1984), *aff'd,* 784 F.2d 862 (8th Cir.1986) ("The post-petition receipt of an inheritance by a debtor [prior to conversion from chapter 11 to chapter 7] does not by itself constitute an acquisition of property by the estate under § 541(a)(7). *An individual debtor and his estate are separate entities.* " (emphasis added)). And there is no readily apparent reason why this distinction, which § 541(a)(6) implicitly recognizes, is not equally valid with respect to non-individual chapter 11 debtors.

Stating the principle more generally, the very manner in which the bankruptcy estate is defined necessarily implies that the debtor retains a status separate from his or its status as debtor in possession. Although the estate includes most property in which the debtor held an interest as of the commence-

---

3. *Cle–Ware* "strongly disapprove[d] the practice of appointing separate counsel as attorney for the debtor-in-possession and at the same time compensating another attorney at the expense of the bankrupt estate in his capacity as counsel for the debtor for [post-petition] services." 493 F.2d at 871. But in expressing this view the court did not question the validity of the dual-entity theory; it was instead motivated by the pragmatic con-

cern that a second attorney was usually superfluous. *See id.* ("We see no valid reason why, as a general rule, [the debtor's] legal representation in both capacities [i.e., as debtor and debtor in possession] should not be limited to one attorney.... In the ordinary situation ..., there is no actual or potential conflict of interest requiring or justifying payment for services of separate attorneys.").

ment of the case, the Code creates an exception for interests of the kind described in 11 U.S.C. § 541(b) and (c)(2). *See* 11 U.S.C. § 541(a)(1). And unless specified otherwise in § 541(a), the chapter 7 or 11 debtor's post-petition property acquisitions belong to the debtor, not the estate. *See Patrick A. Casey, P.A. v. Hochman,* 963 F.2d 1347, 1351 (10th Cir.1992) (Section 541(a)(5) and (6) are "exceptions [to] the general rule that post-petition acquisitions are property of the debtor."); *In re Doemling,* 127 B.R. 954, 955–56 (W.D.Pa.1991); 11 U.S.C. §§ 1207(a) and 1306(a) (enlarging the estate created by § 541 to include most of the debtor's post-petition property acquisitions). In addition, property exempted by individual debtors under § 522(b) no longer belongs to the estate. *In re Briggs,* 143 B.R. 438, 447–48, 27 C.B.C.2d 874 (Bankr.E.D.Mich.1992). Particularly pertinent here is § 1141(b), pursuant to which the debtor may acquire ownership of estate property, thereby removing that property from the estate. Because these various interests are by definition vested in the debtor rather than the debtor in possession, the entities must be legally distinguishable. *See Doemling,* 127 B.R. at 955 ("The [chapter 11] debtors . . . have an identity independent of the bankruptcy estate. . . . The debtors and the estate are not interchangeable."); *id.* at 956 n. 1 ("Section 1306 . . . implicitly acknowledges that the debtor is separate from the estate and may acquire property interests independent of the estate.").

The trustee cited a case which rejected the reasoning in *Doemling. See In re Griseuk,* 165 B.R. 956, 957–58, 25 B.C.D. 790 (Bankr. M.D.Fla.1994). *Griseuk* addressed the question of whether a cause of action for personal injuries that arose post-petition belonged to the individual chapter 11 debtor or the estate. *Id.* at 957. The court ruled in favor of the estate for essentially two reasons. First, it asserted that in chapter 11, as opposed to liquidation under chapter 7, "[a]ll of the assets of the debtor, pre-petition and post-petition, are applied to the reorganization effort and must be dealt with in the plan for the benefit of creditors." *Id.* at 958 (quoting *In re Brannan,* 40 B.R. 20, 22 n. 2, 12 B.C.D. 421 (Bankr.N.D.Ga.1984)).

This argument would be persuasive if *Griseuk* were quoting the Code. But as the Supreme Court recognized, the Code does not require that all assets of the chapter 11 debtor be dedicated to the plan of reorganization. *See Toibb v. Radloff,* 501 U.S. 157, 166, 111 S.Ct. 2197, 2202, 115 L.Ed.2d 145, 154 (1991) ("Because there is no . . . provision in Chapter 11 [comparable to § 1322(a)(1)] requiring a debtor to pay future wages to a creditor, Congress' concern about imposing involuntary servitude on a Chapter 13 debtor is not relevant to a Chapter 11 reorganization."). And as discussed above, there are numerous Code statutes which explicitly or implicitly provide that some property interests are or can be owned by the debtor, rather than the estate, while the bankruptcy case is pending. *Griseuk's* first line of reasoning therefore misses the mark.

The second rationale advanced by *Griseuk* for its holding is that the chapter 11 "debtor and the debtor-in-possession are one in the same." 165 B.R. at 958. In making this assertion, the court relied on *Bildisco,* 465 U.S. at 528, 104 S.Ct. at 1197, and *Triangle Chemicals,* 697 F.2d at 1290. *Griseuk,* 165 B.R. at 958. For the reasons explained earlier, any support that *Bildisco* offers for this view is meager at best.

As for *Triangle Chemicals,* the court there stated that "the probable intent of [11 U.S.C.] section 1101(1) . . . [was that] there [be] no distinction between the 'debtor' and the 'debtor in possession' (where no trustee is appointed)." 697 F.2d at 1290. But § 1101(1), which provides that the " 'debtor in possession' means debtor except when a person that has qualified under section 322 of this title is serving as trustee," simply makes clear that in the absence of a trustee the debtor will act as the debtor in possession. It affords no sound basis for inferring that the debtor's identity is completely merged into that of the debtor in possession. Thus the authority which *Griseuk* cites for its "same-entity" rationale is, like *Griseuk* itself, unpersuasive.

In short, property interests may be held by the post-petition debtor in its own right

(non-estate property) or as debtor in possession (estate property). I therefore reject the trustee's contention that post-petition property acquisitions necessarily constitute estate property under § 541(a)(6) or (7).

In this case, those accounts receivable which were generated pre-confirmation were either part of the chapter 11 estate by virtue of § 541(a)(1) or, if generated post-petition, became a part of the estate under § 541(a)(6) or § 541(a)(7). But that is of no avail to the trustee because those accounts subsequently vested in the Debtor under § 1141(b) when its plan was confirmed.

■ With respect to accounts receivable which may have been generated post-confirmation, many courts have endorsed the view that the estate ceases existence upon plan confirmation if there is no provision preventing estate property from vesting in the debtor. *See, e.g., Pauling Auto Supply,* 158 B.R. at 793; *In re Roy Gooden Plumbing & Sewer Co.,* 156 B.R. 635, 637, 24 B.C.D. 771, 29 C.B.C.2d 511 (Bankr.E.D.Mo.1993); *H.R.P. Auto Center,* 130 B.R. at 256; *T.S.P. Industries,* 117 B.R. at 377. Under that view, of course, the post-confirmation accounts receivable could not enter the chapter 11 estate under § 541(a)(6) or (7). However, I reject that contention as the Code does not explicitly so provide. Moreover an estate—like a trust, a corporation or a person—can exist without assets. *See Security Bank of Marshalltown v. Neiman,* 1 F.3d 687, 690 (8th Cir.1993) ("The [chapter 13] estate can continue to exist as a legal entity after confirmation even if it holds no property."). Based on these considerations, I previously held in a ruling from the bench that the vesting of all estate property in the debtor pursuant to § 1327(b) does not terminate the chapter 13 estate. I see no reason to reach a different result here.

Although I conclude that the chapter 11 estate survived confirmation, the fact remains that any accounts receivable created after confirmation could only have been the product of assets belonging to the Debtor (who owned everything), not the debtor in possession (who owned nothing). Thus even if the estate survived confirmation, there is no basis for concluding that post-confirmation accounts receivable (if any) became a part of that estate under § 541(a)(6) or § 541(a)(7).

■ In what amounts to a second alternative position, the trustee cited *Abbott v. Blackwelder Furniture Co.,* 33 B.R. 399 (W.D.N.C.1983) and *In re Midway, Inc.,* 166 B.R. 585 (Bankr.D.N.J.1994) for the proposition "that on conversion from 11 to 7 all of [the] debtors [sic] property at [the] date of conversion is property of the Chapter 7 estate." Trustee's Response to Objection at ¶7C. These cases do appear to adopt the view that the post-conversion chapter 7 estate is determined by application of § 541(a) at the date of conversion to chapter 7. *See Abbott,* 33 B.R. at 402–03; *Midway,* 166 B.R. at 590; *see also In re Lindberg,* 735 F.2d 1087, 1090 (8th Cir.), *cert. denied,* 469 U.S. 1073, 105 S.Ct. 566, 83 L.Ed.2d 507 (1984) ("[I]n a case converted from chapter 13 to chapter 7, the property of the estate consists of all property in which the debtor has an interest on the date of conversion. *See ... In re Stinson,* 27 B.R. 18[, 10 B.C.D. 354, 8 C.B.C.2d 16] (Bankr.D.Or.1982)....");[4] *Stinson,* 27 B.R. at 20 ("In a chapter 13 case converted to a chapter 7 case ... [, § 541(a)'s reference to the "commencement of a case" must be interpreted as meaning] the commencement of the case to which the original case was converted."). As to this

---

**4.** The court in *Lindberg* did not address the apparent conflict between this assertion and its contention in an earlier case that, "when there is a conversion, the debtors are deemed to have filed a Chapter 7 case at the time the Chapter 13 case was filed." *Resendez v. Lindquist,* 691 F.2d 397, 399 (8th Cir.1982). In any event, it seems that *Lindberg* was limited by a subsequent per curiam decision of the Eighth Circuit in a case involving conversion from chapter 11 to chapter 7. *See Koch v. Myrvold,* 784 F.2d 862, 863 (8th Cir.1986) (rejecting as "without merit" the chapter 7 trustee's argument "that the date of conversion controls in determining what constitutes property of the bankruptcy estate," and stating that "the bankruptcy court [in *In re Myrvold,* 44 B.R. 202 (Bankr.D.Minn.1984)] properly addressed [that] issue[]"); *Myrvold,* 44 B.R. at 204 (distinguishing *Lindberg* based on the fact that "[t]here is no provision in Chapter 11 comparable to 11 U.S.C. § 1306").

issue, however, I believe that § 348 is dispositive.

Section 541(a) provides that "[t]he commencement of a case ... creates an estate" comprising the property interests specified therein. Such interests are for the most part described by reference to the "commencement of the case," *see* 11 U.S.C. § 541(a)(1), (2), (6) and (7), or "the date of the filing of the petition," *see* 11 U.S.C. § 541(a)(5). With exceptions not relevant here, the conversion of a case from one chapter to another "does not effect a change in the date of the filing of the petition [or] the commencement of the case." 11 U.S.C. § 348(a). *Abbott* and the other cases cited ride roughshod over these provisions by ruling in effect that for purposes of § 541(a), conversion is tantamount to the filing of a new petition in the case to which the case converts. Because the analysis offered by these courts does not heed § 348(a), I reject it. *See In re Williamson*, 804 F.2d 1355, 1359 (5th Cir.1986) (Section 348(a) "preclude[s]" treating the date of conversion as the "new [petition] filing date."); *T.S.P. Industries*, 117 B.R. at 378 n. 1; D. Epstein, *Consequences of Converting a Bankruptcy Case*, 60 Am.Bankr.L.J. 339, 345 (1986) (describing "*Lindberg* and the cases cited therein" as "disturbing" because § 348(a) "makes the date of the initial filing the relevant date for most purposes."). More faithful to the Code is the view that the post-conversion estate initially consists of whatever property interests were held by the estate on the date of conversion. *See, e.g.,*

*Calder*, 973 F.2d at 866; *Lybrook*, 951 F.2d at 137–38; *Bartlett*, 149 B.R. at 448–49.[5] *But see* H.R. 5116 at 84, 103d Cong.2d Sess. (1994) (which amends § 348 to provide that "property of the estate in [a case converted from chapter 13] shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion").[6]

In concluding, a point which bears emphasizing is that there was no plan provision preventing the Debtor from acquiring (or reacquiring) ownership in the estate property. The plan having been confirmed, it is now too late to question the validity of that transfer of property interests. *See* 11 U.S.C. § 1141(a); *see also, e.g., Laing*, 31 F.3d at 1051 (The debtor's "confirmed Chapter 11 plan binds him as a final judgment on the merits."); *Chattanooga Wholesale Antiques*, 930 F.2d at 463 ("Confirmation of a plan of reorganization ... has the effect of a judgment ... and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings."); *Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1050 (5th Cir.1987) (creditor could not challenge "the propriety or legality of [a chapter 11] confirmation order" except by appealing that order); *In re Holly's*, 172 B.R. 545, 568 (Bankr.W.D.Mich.1994); *In re St. Louis Freight Lines*, 45 B.R. 546, 552–53, 12 B.C.D. 647, 11 C.B.C.2d 1317 (Bankr. E.D.Mich.1984) ("[I]f the Court were today

---

**5.** Each of these cases and a major bankruptcy treatise stated or implied that *Lindberg, supra* pp. 625–26, reached a similar conclusion. *See Calder*, 973 F.2d at 865; *Lybrook*, 951 F.2d at 138; *Bartlett*, 149 B.R. at 447; *id.* at 448; 2 W. Norton, *Norton Bankruptcy Law and Practice 2d*, § 33.14 n. 76. But *Calder, Lybrook* and *Bartlett* endorsed what might be called a "continuous-estate" theory, according to which the entirety of a chapter 13 estate transforms into a chapter 7 estate upon conversion. *Lindberg* stands for a very different proposition—namely, that a 13–to–7 conversion establishes a new estate comprising those interests held by the *debtor*—not the chapter 13 estate—on the date of conversion. (Though fundamentally different, the continuous-estate theory and *Lindberg's* new-estate theory are not mutually exclusive. *See In re Tworek*, 107 B.R. 666, 667 (Bankr.D.Neb.1989) ("[P]roperty of a debtor's Chapter 7 estate after conversion from Chapter 13 ... includes both property

of the Chapter 13 estate and 'all property in which the debtor has an interest on the date of conversion.' *Lindberg*, 735 F.2d at 1090.")).

**6.** Although this amendment would largely overrule cases like *Calder*, the method utilized by those cases for determining the estate of a converted case would be used if the conversion is "in bad faith." H.R. 5116 at 84, 103d Cong., 2d Sess. (1994). Moreover, the amendment relates only to conversions from chapter 13. In conjunction with Congress' longstanding goal of encouraging individual debtors to proceed under chapter 13 rather than chapter 7, *see, e.g., In re Brunson*, 87 B.R. 304, 307, 18 C.B.C.2d 402 (Bankr.D.N.J.1988), these considerations warrant the inference that the amendment was prompted solely by policy concerns. There is no basis for inferring from the amendment that *Calder* misinterpreted the Code.

deciding an objection to the confirmation of the debtor's plan ..., we might be constrained to ... deny confirmation. But that day has long since passed.... The plan was confirmed.... The matter is *res judicata*."); B. Akerly & C. Ozburn, *The Impact of Confirmation and Postconfirmation Remedies: A Practical Guide,* J.Bankr.L. & Prac., Vol. 3, No. 6, 551, 578 (1994) ("The confirmed [chapter 11] plan is a contract ... between the debtor and its preconfirmation creditors, and is binding and enforceable as such.").

As the account receivable is not property of the estate, an order shall enter dismissing the motion for authority to compromise it.